# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

VAPE GUYS, INC.,

      **Plaintiff,**

v.                                                  **Civil Action No. 3:19cv298**

VAPE GUYS DISTRIBUTION, INC.,

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)      Plaintiff Vape Guys, Inc.'s ("Plaintiff") Motion for Referral to U.S. Magistrate Judge for Settlement Conference (the "Motion for Settlement"), (ECF No. 13);

(2)      Defendant Vape Guys Distribution, Inc.'s ("Defendant") Motion to Dismiss, or in the Alternative, Transfer Venue (the "Motion to Dismiss"), (ECF No. 15); and,

(3)      Plaintiff's Motion for Jurisdictional Discovery and to Stay Consideration of Defendant's Motion to Dismiss (the "Motion for Jurisdictional Discovery"), (ECF No. 21).

Defendant responded to the Motion for Settlement, (ECF No. 18), and Plaintiff replied, (ECF No. 19). Plaintiff responded to the Motion to Dismiss, (ECF No. 20), incorporating the Motion for Jurisdictional Discovery into its Response. Defendant replied to Plaintiff's response, (ECF No. 22), but did not respond to the Motion for Jurisdictional Discovery and the time to do so has expired. These matters are ripe for adjudication.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The

Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[1] and 1367(a).[2] For the reasons that follow, the Court will deny the Motion to Dismiss, the Motion for Settlement, and Motion for Jurisdictional Discovery.

## I. Procedural and Factual Background

### A. Procedural History

Plaintiff brings the following claims in its Complaint:

**Count I:** Infringement of Federally Registered Trademark

**Count II:** Federal Unfair Competition and False Designation of Origin

**Count III:** Violation of Virginia Code § 59.1-92.12

**Count IV:** Common Law Unfair Competition

After filing its Complaint, Plaintiff filed the Motion for Settlement. Approximately two weeks later, Defendant opposed the Motion for Settlement[3] and filed the Motion to Dismiss.

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

[2] The Court exercises supplemental jurisdiction over Plaintiff's Virginia and common law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The Complaint alleges pendent claims of trademark infringement under Va. Code Ann. § 59.1 and common law unfair competition.

[3] Plaintiff brings the Motion for Settlement seeking a referral to a United States Magistrate Judge for a settlement conference. Plaintiff "believes this action raises a business dispute that lends itself to a business resolution." (Mot. Settlement 1, ECF No. 14.) Defendant maintains that it has spoken substantively with Counsel for Plaintiff and Counsel for Plaintiff has not previously suggested that this matter represents a "business dispute." (Resp. Mot. Settlement 2, ECF No. 18.) Defendant asserts that it "has seen nothing to indicate that Plaintiff has developed, or intends to propose, any sort of reasonable resolution such that settlement discussions in front of a Magistrate Judge would be worthwhile." (*Id.*)

Because the Parties appear not to have discussed terms of settlement nor sought mediation outside the Court's purview, the Court will deny the Motion for Settlement. The

Defendant brings the Motion to Dismiss on three grounds: (1) Rule 12(b)(2);[4] (2) Rule

12(b)(3);[5] and, (3) Rule 12(b)(6).[6] As a fourth request in the Motion to Dismiss, Defendant seeks

transfer to the United States District Court for the Eastern District of Virginia pursuant to 28

U.S.C. § 1404(a).[7] Plaintiff filed its reply to the Motion for Settlement and filed the Motion for

Jurisdictional Discovery in response to the Motion to Dismiss. Defendant replied to the Motion

to Dismiss.

---

Court encourages the Parties to work toward resolution of this matter and, after holding an initial
pretrial conference, the Court may consider a referral to a Magistrate Judge.

[4] Rule 12(b)(2) allows a party to move to dismiss a complaint for "lack of personal
jurisdiction." Fed. R. Civ. P. 12(b)(2).

[5] Rule 12(b)(3) allows a party to move to dismiss a complaint for "improper venue." Fed.
R. Civ. P. 12(b)(3).

[6] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be
granted." Fed. R. Civ. P. 12(b)(6).

[7] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest
of justice, a district court may transfer any civil action to any other district or division where it
might have been brought or to any district or division to which all parties have consented." 28
U.S.C. § 1404(a).

**B.   Factual Background[8]**

The Court will first introduce the two companies in this dispute: Plaintiff Vape Guys,

Inc. and Defendant Vape Guys Distribution, Inc.  It will then turn to the conduct that Plaintiff

alleges supports its trademark infringement claims.

**1.   Plaintiff and the Vape Guys Mark**

"Founded in 2014,"[9] Plaintiff "sell[s] a wide range of products and accessories for retail

consumers in the electronic cigarette, or 'vapor' industry." (Compl. ¶ 10, ECF No. 1.)  Plaintiff

makes these sales through its brick and mortar store, as a wholesale distributor, and through an

online retail store accessible via "two (2) websites, 'Vape Guys VA' (www.VapeGuysVa.com),

and "Vape Guys, Inc." (www.VapeGuysinc.com)." (*Id.* ¶¶ 10–12.)  Plaintiff "owns

---

[8] Because the Defendant brings the Motion to Dismiss on several different grounds, the
Court construes facts through differing lenses when assessing arguments raised in the Motion to
Dismiss.  When considering the Defendant's Motion to Dismiss on personal jurisdiction grounds,
Plaintiff bears the burden of proving grounds for personal jurisdiction. *Carefirst of Md., Inc. v.
Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Because the Court has not
held an evidentiary hearing, the Court determines only whether Plaintiff has made a prima facie
showing of personal jurisdiction. *Id.*  In evaluating whether Plaintiff has made a prima facie
demonstration of personal jurisdiction, the Court "must construe all relevant pleading allegations
in the light most favorable to the plaintiff, assume credibility, and draw the most favorable
inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242
F. App'x 889, 890 (4th Cir. 2007); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)
("When determining whether a plaintiff has made the requisite prima facie showing, the court
must take the allegations and available evidence relating to personal jurisdiction in the light most
favorable to the plaintiff.")
   These same standards apply when the Court considers the Motion to Dismiss for
improper venue. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 (4th Cir. 2012);
*Adhikari v. KBR, Inc.*, No. 1:15cv1248, 2016 WL 4162012, at *3 (E.D. Va. Aug. 4, 2016).
   However, when considering the Motion to Dismiss on the ground that Plaintiff failed to
state a claim, "a court 'must accept as true all of the factual allegations contained in the
complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer
Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de
Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[9] In the Motion to Dismiss, Defendant states that "the State Corporation Commission of
Virginia indicates that Plaintiff[]'s date of formation/registration for "Vape Guys, Inc." did not
occur until April 24, 2015." (Mem. Supp. Mot. Dismiss 3–4, ECF No. 16.)  At this early stage,
this possible discrepancy does not affect the Court's analysis.

approximately thirty (30) domain names, and uses two Instagram accounts and two Facebook accounts in connection with its business." (*Id.* ¶ 12.)

Plaintiff states that it "promotes its 'Vape Guys' brand and products through a variety of marketing platforms, including trade shows, its online retail store and direct marketing of its wholesale distribution services to retailers." (*Id.* ¶ 13.) Plaintiff "also maintains an active social media presence for its retail and wholesale business with over 4,000 followers on its Facebook page and nearly 7,000 followers on its Instagram feed." (*Id.*)

On February 21, 2017, Plaintiff "filed an application for trademark registration of its 'Vape Guys' brand with the United States Patent and Trademark Office" (the "USPTO"). (*Id.* ¶ 14.) "On September 12, 2017, the [USPTO] approved [Plaintiff's] application" and Plaintiff obtained its trademark (the "Vape Guys Mark"). (*Id.* ¶ 15.) "The services claimed by [Plaintiff] in its registration are 'retail store services featuring a wide variety of smokers' articles; online retail store services featuring a wide variety of smokers' articles; and wholesale distributorships featuring smokers' articles.'" (*Id.* (quoting Compl. Ex. A "Trademark Registration Certificate," ECF No. 1-1).) Plaintiff asserts that it has used the Vape Guys Mark "since at least as early as October of 2014." (*Id.* ¶ 16.)

Plaintiff maintains that it "has invested substantial time, effort, and resources in developing and maintaining the Vape Guys Mark and building the Vape Guys brand, and has used the Vape Guys Mark consistently in [its] marketing and promotion of its services since 2014." (*Id.* ¶ 19.) Therefore, Plaintiff avers that the Vape Guys Mark "is a valuable asset." (*Id.*)

## 2. **Defendant**

Similar to Plaintiff, Defendant "is a purveyor of electronic cigarette and related 'vapor' products in Brooklyn, New York." (Khodos Decl. ¶ 2, ECF No. 17.)[10]  Since 2016, approximately two years after Plaintiff was founded, "[Defendant] has sold its products at its physical location in Brooklyn as well as online through the e-commerce website hosted at the domain, www.vapeguysdistro.com." (*Id.*)  Plaintiff states that Defendant's website "requires users to register and create an account in order to purchase the products advertised in Defendant's direct solicitations." (Compl. ¶ 8.)  Defendant "maintains no [United States]-based offices, employees, agents, or property outside of New York [s]tate." (Khodos Decl. ¶ 7.)  Defendant asserts that "[p]roducts sold through [Defendant's] e-commerce website are either delivered in New York or shipped from New York to the purchaser." (*Id.*)

As for its marketing strategy, Defendant uses social media and attends trade shows. Defendant states that it "maintains an active social media presence with approximately 5[,]000 followers on Instagram and Facebook." (*Id.* ¶ 3.)  Defendant asserts that its "social media presence dates back to at least 2016.  The social media posts primarily display [its] product line." (*Id.*)  Defendant also "regularly attends industry trade shows around the country." (*Id.* ¶ 5.) Defendant asserts that "[a]side from New York," it "markets and promotes its products in various [United States] jurisdictions, including New Jersey, California, Texas, Illinois, Florida, and Nevada." (*Id.* ¶ 6.)  Defendant maintains that "Virginia is not a commercially meaningful

---

[10] Although a court generally may not consider documents outside the Complaint when considering a motion to dismiss brought pursuant to Rule 12(b)(6), when ruling on a Rule 12(b)(2) Motion to Dismiss, the Court may rely on "motion papers, supporting legal memoranda, and the allegations in the complaint." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  Because the Court will address the Motion to Dismiss under both Rule 12(b)(2) and Rule 12(b)(6), the Court introduces the facts contained in the Khodos Declaration here.  As explained below, the Court will not consider the allegations in the Khodos Declaration when deciding the Motion to Dismiss on Rule 12(b)(6) grounds.

locale for [Defendant] and, if enjoined from operating in Virginia by the Court, such event would not meaningfully impact [Defendant's] business." (*Id.*)

### 3. The Allegedly Infringing Conduct

Plaintiff states that "[u]pon information and belief, Defendant began its solicitation of [Plaintiff's] customers and suppliers no later than May 2018." (Compl. ¶ 22.) Plaintiff asserts that it "was unaware of Defendant's infringing conduct until late July 2018." (*Id.* ¶ 23.)

Plaintiff first discovered what it calls Defendant's infringement "when a customer in Roanoke Rapids, North Carolina (Cloud 9 Vapor[]) forwarded an email to . . . its sales representative at [Plaintiff], that the customer had received from Defendant." (Compl. ¶ 23.) The email stated: "I spoke to you yesterday regarding some of the brands we have in common. I do believe I can give you a lower rate for these products." (*Id.* (quoting Compl. Ex. B "Cloud 9 Vapors Email" 1, ECF No. 1-2.) "Cloud 9 Vapor also reported receiving a call from someone purporting to be [Plaintiff], stating that 'Anthony' was on vacation, but that Cloud 9 Vapor could place its order with the caller." (*Id.*) "Cloud 9 Vapor later determined that the caller worked for Defendant." (*Id.*)

Plaintiff maintains that "Defendant had directed similar solicitations" to Plaintiff's other Virginia customers around the same time Defendant contacted Cloud 9 Vapor. (*Id.* ¶ 24.) Plaintiff believed that Defendant "was using the similarity between its name and the Vape Guys Mark to obtain business from [Plaintiff's] customers." (*Id.* ¶ 25.) Plaintiff further claims that Defendant's email solicitations were "causing confusion among [Plaintiff's] wholesale customers and suppliers, thereby diminishing the strength of the Vape Guys Mark and damaging [Plaintiff's] reputation and business relationships with existing customers." (*Id.* ¶ 25.) For this reason, on September 10, 2018, Plaintiff issued a cease and desist letter to Defendant "notifying

Defendant of the federally-registered Vape Guys Mark, [Defendant's] unlawful infringement by use of the Vape Guys Mark, and demanding that Defendant cease all further use of the Vape Guys Mark." (*Id.* ¶ 26.)

Ten days later, on September 20, 2018, "Defendant changed its Facebook page to replace 'Vape Guys Distro' with 'Vape Distro.'" (*Id.* ¶ 27.) Plaintiff maintains that "upon information and belief, [Defendant] took no further corrective actions," but instead "knowingly continued infringing upon the Vape Guys Mark." (*Id.*)

As evidence of Defendant's continued infringement, Plaintiff points to an email it received on October 11, 2018, approximately one month after it sent the cease and desist letter to Defendant. Plaintiff received the email from Arc Distribution, Inc. ("Arc"), "one of its major suppliers of vapor product." (*Id.* ¶ 28.) The email stated:

> We have had several complaints among our sales team about 2 sales reps from your company (Michael and Luke), who are deliberately finding clients that carry our products and offering lower pricing. I have 2 emails . . . that I want you to see and address with your sales team. We have lost a huge client base in Virginia and most of North East due to this. This is devaluing our company and setting a new standard in our pricing tiers. We have an agreement to stick to certain pricing tiers and unfortunately you are at HIGH risk from getting cut off from supply. At this point, if you feel you can't work within our tiers, it is important that you fill out a return from [sic] and we will send you return labels for our products that you have in stock and return any money owed to you. I hope this email is taken serious[ly] or we will have to take legal action.

(*Id.* ¶ 28 (quoting Compl. Ex. D "Arc Email" 1, ECF No. 1-4).) The Arc employee who sent the October 11, 2018 email forwarded two emails supporting his claims, which Plaintiff attaches to its Complaint. (Compl. Ex. D-1, ECF No. 1-4; Compl. Ex. E "Arc/ECIG Lounge Email," ECF No. 1-5.) Plaintiff explains that it did not employ a "Michael" or a "Luke" at the time in question. (Compl. ¶ 34.)

Plaintiff also states that "[u]pon further investigation, [Plaintiff] discovered that Defendant had been actively soliciting [Plaintiff's] customers throughout the United States using the Vape Guys Mark." (*Id.* ¶ 36.) In support of this contention, Plaintiff points to a September 11, 2018 email chain in which a customer thought Plaintiff had called "to offer lower pricing on vapor products" and Plaintiff's employee had to "explain to the customer that the confusion had been caused by a solicitation from Defendant holding itself out as 'Vape Guys.'" (*Id.* (citing Compl. Ex. G "Rolling Rock Vapor Email" 1–2, ECF No. 1-7).) Another customer reached out to Plaintiff "and wanted to know if 'Eugene' worked for [Plaintiff]" because the customer "had a message that somebody called from V[ape] Guys named Eugene." (*Id.* ¶ 37 (citing Compl. Ex. H "Troposhere Text Message" 1, ECF No. 1-8).)

Plaintiff also discovered that "Defendant had actively solicited [Plaintiff's] customers in Virginia, including RVA Vapes, which operates a store in Richmond, Virginia; Voltage Vapes, which operates a store in Chester, Virginia; and Lava Vape and Vapor Chasers, which operate stores in Virginia Beach, Virginia." (*Id.* ¶ 38.) In support of its Response to the Motion to Dismiss, Plaintiff submits three declarations[11] from owners or managers of vapor shops in which each declarant avers that he or she received, on behalf of the vapor shop, a solicitation from Defendant. (*See* Resp. Exs. 2–4, ECF Nos. 20-2–20-4.)

First, Joseph O. Taylor, III, the "owner and President of Voltage Vapin' Inc." declares that the company operates a "vapor shop located at 10104 Chester Road, Chester, VA 23831."

---

[11] Although the vapor shops referred to in these declarations bear different names than the vapor shops Plaintiff mentions in the Complaint, because the Court makes all reasonable inferences in favor of Plaintiff when deciding the Motion to Dismiss, the Court will presume that Plaintiff intended to refer to the shops referenced in the declarations. *Brooks*, 242 F. App'x at 890 (stating this principle for Rule 12(b)(2) motions to dismiss); *Aggarao*, 675 F.3d at 366 (stating this principle for Rule 12(b)(3) motions to dismiss); *Kensington*, 684 F.3d at 467 (stating this principle for Rule 12(b)(6) motions to dismiss). As with the Khodos Declaration, the Court will not consider these declarations when deciding the Motion to Dismiss on Rule 12(b)(6) grounds.

(Taylor Decl. ¶ 1, ECF No. 20-2.) Taylor states that "[i]n mid to late 2018, Voltage Vapin'

began receiving solicitations from a company calling itself 'Vape Guys.'" (*Id.* ¶ 4.) Taylor

maintains that "[t]he solicitations were made by telephone and email" adding that he "received

these telephone calls as did [Taylor's] manager and members of [his] sales force." (*Id.*) Taylor

"deleted the email solicitations and did not keep copies" and "[a]t some point, [he] clicked

'unsubscribe' and stopped receiving these solicitations." (*Id.* ¶ 5.)

Second, Randall Smith, "member and manager of Vape Chasers, LLC, . . . which owns

and operates three vapor shops located in Virginia Beach, Virginia," declares that "Vape Chasers

received at least 2–3 telephone solicitations and 5–6 email solicitations from a company calling

itself 'Vape Guys.'" (Smith Decl. ¶¶ 1, 3, ECF No. 20-3.) Similar to Taylor, Smith states that

he "deleted the email solicitations." (*Id.* ¶ 4.)

Finally, Noelle Pryor, "the member and manager of RVA Vapes, LLC, . . . a vapor shop

located at 6100 W. Broad Street, Richmond, Virginia," declares that "[d]uring the past year,

RVA Vapes received email solicitations from a company calling itself 'Vape Guys.'" (Pryor

Decl. ¶¶ 1, 3, ECF No. 20-4.) Similar to Taylor and Smith, Pryor reports that she "deleted the

email solicitations [and] did not keep copies." (*Id.* ¶ 4.)

On October 24, 2018, Plaintiff "issued a second cease and desist letter to Defendant,"

because it had discovered that Defendant continued contacting customers after receiving the first

cease and desist letter, (Compl. ¶ 40 (citing Compl. Ex. I "October 24, 2018 Letter," ECF No. 1-

9).) Plaintiffs maintains that "Defendant has failed and refused to cease its infringement of the

Vape Guys Mark" and points to a December 26, 2018 email in which Defendant contacted one

of Plaintiff's "customers in Virginia Beach, using the name <eric.vapeguys@gmail.com>." (*Id.*

¶¶ 41–42 (citing Compl. Ex. J "Lava Vape LLC Email," ECF No. 1-10).) Plaintiff avers that

10

"[t]he customer detected the deception immediately and forwarded the email to [Plaintiff]." (*Id.* ¶ 42.)

Having presented the Parties and the complained-of infringing conduct, the Court turns to the instant Motion to Dismiss which the Defendant brings on several grounds: (1) lack of personal jurisdiction; (2) improper venue; (3) failure to state a claim; and, (4) to transfer under 28 U.S.C. § 1404(a). The Court assesses each ground in turn.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A.     Standard of Review:  Rule 12(b)(2)

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When, as here, a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Id.*; *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)).

The Court "has considerable procedural leeway in choosing a methodology for deciding the [Rule 12(b)(2)] motion." 5B Alan Wright and Arthur Miller, Fed. Practice & Procedure § 1351, at 305 (3d ed. 2004). A number of courts have identified three possible approaches:

ruling on the written record, permitting discovery, or holding an evidentiary hearing. *See, e.g.,*
*Williams v. FirstPlus Home Loan Tr. 1996-2*, 209 F.R.D. 404, 409 (W.D. Tenn. 2002) (stating
that a court "may decide the motion upon the affidavits alone; it may permit discovery in aid of
deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual
questions."). A hearing may be appropriate "in particularly complex cases." 5B ALAN WRIGHT
& ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1351, at 305, 308 (3d ed. 2004). In
straightforward cases, like the one before the Court, "[t]he Court may resolve the issue based on
the affidavits and the supporting documents" without a hearing. *Initiatives Inc. v. Korea Trading
Corp.*, 991 F. Supp. 476, 477–78 (E.D. Va. 1997).

When ruling on a Rule 12(b)(2) Motion to Dismiss, the Court may rely on "motion
papers, supporting legal memoranda, and the allegations in the complaint." *Consulting Eng'rs
Corp.*, 561 F.3d at 276 (citing *Combs*, 886 F.2d at 676); *see also* 5B ALAN WRIGHT & ARTHUR
MILLER, FEDERAL PRACTICE AND PROCEDURE § 1351, at 305 (3d ed. 2004) ("The court may
receive and weigh the contents of affidavits and any other relevant matter submitted by the
parties to assist it in determining the jurisdictional facts."). "For purposes of the motion to
dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either
party is true." *Reynolds Foil*, 2010 WL 1225620, at *1. "In considering whether the plaintiff
has met this burden, the district court 'must construe all relevant pleading allegations in the light
most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the
existence of jurisdiction.'" *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir.
2014) (quoting *Bakker*, 886 F.2d at 676). Still, a plaintiff cannot rely on "bare pleadings alone"
after a defendant properly challenges personal jurisdiction. *Machulsky*, 210 F. Supp. 2d at 537
(quotation omitted). Instead, "the plaintiff must sustain its burden of proof in establishing

jurisdictional facts through sworn affidavits and competent evidence . . . . [A] plaintiff must respond with actual proof[], not mere allegations." *Id.* (quotation omitted); *see also FirstPlus*, 209 F.R.D. at 409–10 (concluding that a court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." (quoting *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997))).

### B.  Analysis

#### 1.  Legal standard:  Personal Jurisdiction Generally

"Federal courts exercise personal jurisdiction in the manner provided by state law." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).

"Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)) (internal citation omitted).  Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst*, 334 F.3d at 397. "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. . . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State."[12] *ALS Scan*, 293 F.3d at 712 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U .S. 408, 414 & nn.8–9 (1984)).

The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists. *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (citing *ALS Scan*, 293 F.3d at 712). The Court must consider: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *ALS Scan*, 293 F.3d at 712). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Consulting Eng'rs*, 561 F.3d at 278.

---

[12] General jurisdiction exists only when a defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] *essentially at home* in the forum [s]tate.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added). Nothing in the record indicates, and Plaintiff does not contend, that Defendant engaged in "continuous and systematic" activities within Virginia. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Consequently, the Court's inquiry focuses on whether Defendant's conduct allows the Court to exercise specific personal jurisdiction over Defendant.

### 2. Plaintiff Has Alleged Sufficient Facts to Establish a Prima Facie Showing of Personal Jurisdiction

Plaintiff contends that Defendant is subject to personal jurisdiction in Virginia because Defendant's solicitation of businesses in Virginia and operation of its website allowing Virginia citizens to access and place orders caused Plaintiff to suffer "monetary and reputational damages." (*See* Compl. ¶¶ 7–9.) Plaintiff submits several emails and affidavits to show Defendant soliciting business from Plaintiff's Virginia customers. Defendant, on the other hand, claims that it has no physical presence and no continuing contractual obligations in Virginia. (Mem. Supp. Mot. Dismiss 10.) Defendant maintains that because Plaintiff has alleged only a few solicitations in Virginia and has not identified a sale that resulted from those solicitations, these solicitation contacts cannot support the exercise of personal jurisdiction. (*Id.* 10.) As to its website, Defendant suggests that because the website does not target Virginians, it cannot support the Court's exercise of specific personal jurisdiction. (*Id.* 11.)

Because the Court did not hold an evidentiary hearing, Plaintiff must show only a prima facie case of personal jurisdiction. *See Carefirst of Md., Inc.*, 334 F.3d at 396. In determining whether Plaintiff has met this standard, the Court must also make all inferences in favor of jurisdiction. *See Brooks*, 242 F. App'x at 890. Based on this standard of review, the Court concludes that although Defendant has no physical presence in Virginia, its action of soliciting business in Virginia, its Virginia sale, and its interactive website subject it to specific personal jurisdiction on Plaintiff's trademark infringement and unfair competition claims in Virginia, at least at this early stage. The Court will address each element of the specific personal jurisdiction test seriatim.

### a. Plaintiff Has Alleged that Defendant Has Sufficient Minimum Contacts With Virginia

To satisfy the first prong of the specific personal jurisdiction test, Plaintiff must show that Defendant "purposefully avail[ed itself] of the privilege of conducting business under the laws of" Virginia. *Consulting Eng'rs*, 561 F.3d at 278. "[N]o clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil*, 2010 WL 1225620, at *2.

The Fourth Circuit has identified a non-exhaustive list of factors that a court may consider when deciding whether a plaintiff has satisfied the purposeful availment prong. *See Consulting Eng'rs*, 561 F.3d at 278. These factors include: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality, and extent of the parties' communications about the business being transacted;" and, (8) "whether the performance of contractual duties was to occur within the forum." *Id.* (internal citations omitted).

Regarding purposeful availment, Defendant states that it "maintains no [United States]-based offices, employees, agents, or property outside of New York [s]tate" and Defendant's employees "all . . . reside within New York [s]tate []or are within the subpoena power of the Eastern District of New York." (Khodos Decl. ¶¶ 7, 9.) Defendant also states that it has "no significant or long-term business activities in Virginia, including no contractual obligations with any Virginia residents." (Mem. Supp. Mot. Dismiss 10 (citing Khodos Decl. ¶¶ 6, 7).) Because

Plaintiff does not allege that a contract exists between Plaintiff and Defendant, no allegation exists that the Parties agreed that the law of Virginia would govern their disputes.

Plaintiff believes that the Court may exercise personal jurisdiction over Defendant because Defendant solicited business from Plaintiff's Virginia consumers. Plaintiff also points to at least one sale that Defendant made in Virginia. Finally, Plaintiff maintains that Defendant's website constitutes an "interactive e-commerce website" because the website "requires users to register and create an account in order to purchase the products advertised in Defendant's direct solicitations." (Compl. ¶ 8.) At this early stage and because Plaintiff must establish only a prima facie case of personal jurisdiction, these allegations satisfy Plaintiff's burden of establishing that Defendant has sufficient minimum contacts with Virginia.

### i. Defendant's Business Solicitations Sent to Virginia Consumers Support the Existence of Personal Jurisdiction

The Fourth Circuit has identified "whether the defendant reached into the forum state to solicit or initiate business" as one of the prongs that the Court may consider when determining whether a defendant has sufficient minimum contacts with the forum state. *Consulting Eng'rs*, 561 F.3d at 278 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221 (1957); *Burger King*, 471 U.S. at 475–76). The Supreme Court of the United States has stated that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State [it] ha[s] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Burger King*, 471 U.S. at 476 (citing cases).

In support of its trademark infringement claims, Plaintiff asserts that Defendant has solicited business from several of its Virginia customers. Plaintiff submits sworn declarations from owners or managers of three Virginia-based vapor shops, in which the declarant asserts that

Defendant contacted the vapor shop to solicit business. (*See* Taylor Decl. ¶ 4; Smith Decl. ¶ 3; Pryor Decl. ¶ 3.) Plaintiff also submits an email in which another Virginia customer states that Defendant contacted it in an effort to solicit business. (*See* Lava Vape LLC Email 4; Compl. ¶ 42 (referring to vapor shop to which Defendant sent the email as Plaintiff's "customer in Virginia Beach").) Defendant does not contest that it has solicited business in Virginia, arguing only that because Plaintiff identified no sales and Defendant has no physical presence in Virginia, these solicitations alone cannot establish minimum contacts with Virginia. (Mem. Supp. Mot. Dismiss 10.) However, because Defendant has "purposefully directed" its actions toward Virginia by repeatedly soliciting business there, the lack of physical contacts with Virginia cannot defeat the Court's exercise of personal jurisdiction. *See Burger King*, 471 U.S. at 476. No allegation exists that a sale arose from the solicitations described above. However, when they are considered alongside Plaintiff's allegation that at least one Virginia sale exists and that Defendant operates an interactive website accessible to Virginians, Defendant's solicitations sent directly to Virginia consumers readily support the Court's conclusion that Defendant has sufficient minimum contacts with Virginia.

### ii.    Defendants Made At Least One Virginia Sale

Although the Fourth Circuit has not identified sales as one of the factors that a court should consider when determining whether a defendant has sufficient contacts with a forum state to support finding personal jurisdiction, the *Consulting Engineers* court recognized that a court need not limit itself to only those factors listed. *Consulting Eng'rs*, 561 F.3d at 278 (stating that the "factors include, but are not limited to" the listed factors). Here, information contained in the record shows that at least one Virginia sale exists.

Plaintiff submitted an email from its distributor, Arc, in which Arc threatened to sever ties with Plaintiff because it believed that Plaintiff sold products at a lower price than the sale price Plaintiff agreed to with Arc. (*See* Arc Email 1.) Arc writes that it has "lost a huge client base in Virginia" due to the conduct it attributed to Plaintiff. (*Id.*) Looking to the emails that Arc sent to Plaintiff and which Plaintiff attaches to the Complaint, Plaintiff explains that it did not make this sale, but that Defendant did. (*See* Compl. ¶ 34 (citing Arc Email, Arc/ECIG Lounge Email).) Although Plaintiff does not specify which entity purchased product from Defendant, because the Court must make all inferences in favor of jurisdiction, the Court will infer that this sale supports the Court's exercise of specific personal jurisdiction. *See Brooks*, 242 F. App'x at 890.

Defendant also does not dispute that it engages in commercial sales in Virginia. Specifically, Defendant states that "Virginia represents only a small fraction of [Defendant's] target business and, as such, Virginia is not a meaningful market for [Defendant] relative to the other jurisdictions wherein [Defendant] has transacted substantial business." [13] (Mem. Supp. Mot. Dismiss 4 (citing Khodos Decl. ¶¶ 5–6).) Although Defendant does not see Virginia as a "meaningful market," it does not dispute that it has made sales in Virginia. (*Id.*) Courts agree that even a small percentage of sales can subject an entity to personal jurisdiction in the forum state. *See Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, 241 F. Supp. 3d 708,

---

[13] Defendant maintains that it made this assertion to show that "[s]ince [Defendant] does meaningful amounts of business *outside of Virginia*, incidental contacts **within Virginia** are insufficient for personal jurisdiction." (Reply Mot. Dismiss 3, ECF No. 22 (emphasis in original).) However, when considered alongside Plaintiff's allegations that Defendant solicited business from Virginia consumers and operates an interactive website, even a small amount of sales in Virginia supports the Court's conclusion that Defendant has sufficient minimum contacts with Virginia. *See Thousand Oaks Barrel Co. v. Deep South Barrels LLC*, 241 F. Supp. 3d 708, 716 (E.D. Va. 2017) (stating that "several courts have persuasively concluded that personal jurisdiction exists . . . where the defendant has a national interactive e-commerce website that generates a small amount of e-commerce sales in the forum state." (citing cases)).

716 (E.D. Va. 2017) (collecting cases). Therefore, when combined with Defendant's business solicitations sent to Virginia consumers and Defendant's interactive website, Defendant's sales in Virginia favor the Court exercising specific personal jurisdiction over Defendant. *See id.*

### iii. <u>Defendant Operates an Interactive Website</u>

Finally, Plaintiff maintains that the Court may also properly exercise personal jurisdiction over Defendant based on the Defendant's website. (Compl. ¶ 8.) Plaintiff contends that Defendant's website is an "interactive e-commerce website, which requires users to register and create an account in order to purchase the products advertised in Defendant's direct solicitations." (*Id.*) Defendant maintains that its website is "merely passive" and because it does not directly target Virginians, it cannot be used to establish personal jurisdiction over Defendant. (Mem. Supp. Mot. Dismiss 11; Reply Mot. Dismiss 4–5.) Because Defendant's website is an interactive website that all Virginians can access—and that at least one of Plaintiff's Virginia customers did access—its existence favors the Court exercising specific personal jurisdiction over Defendant.

### a. Personal Jurisdiction:<br>Internet-Based Contacts

The Fourth Circuit has developed a three-part test to analyze personal jurisdiction in the context of Internet-based contacts.[14] *Unspam Techs., Inc.*, 716 F.3d at 328 (quoting *ALS Scan*, 293 F.3d at 712). A state "may, consistent with due process, exercise judicial power over a

---

[14] "Applying the traditional due process principals governing a [s]tate's jurisdiction over persons outside of the [s]tate based on Internet activity requires some adaptation of those principles. . . ." *ALS Scan*, 293 F.3d at 712. "Technology cannot eviscerate the constitutional limits on a [s]tate's power to exercise jurisdiction over a defendant." *ALS Scan*, 293 F.3d at 711. Merely placing information on the Internet does not suffice to justify a state's exertion of personal jurisdiction over a person or entity. *Id.* at 714. If the Court "were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each [s]tate in which the information is accessed, then the defense of personal jurisdiction, in the sense that a [s]tate has geographically limited judicial power, would no longer exist." *Id.* at 712.

person outside of the [s]tate when that person (1) directs electronic activity into the [s]tate, (2) with the manifested intent of engaging in business or other interactions within the [s]tate, and (3) that activity creates, in a person within the [s]tate, a potential cause of action cognizable in the [s]tate's courts." *ALS Scan*, 293 F.3d at 714. A person who simply places information on the internet, with nothing more, cannot be subjected to personal jurisdiction in each state into which the electronic signal is transmitted and accessed. *See id.*; *see also Carefirst*, 334 F.3d at 399.

Relevant here, the Fourth Circuit has modified the "sliding scale" model developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to assess whether a defendant's alleged conduct has met the "manifested intent" element of the test above when the conduct flows exclusively from a defendant's contact with the forum state via an internet-based website. *ALS Scan*, 293 F.3d at 713. The *Zippo* court utilized a three-level sliding scale[15] to determine whether a website's electronic contacts with a state suffice to exercise personal jurisdiction by distinguishing among interactive, semi-interactive, and passive websites. *Id.* Under this scale, websites that knowingly and repeatedly interact with entities or persons within a particular jurisdiction likely establish specific personal jurisdiction for the website owners. *Id.* On the other end, passive websites which "merely make[] information

---

[15] The "sliding scale" recognizes three categories of websites:

> When a defendant runs an interactive site, through which he "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," he can properly be haled into the courts of that foreign jurisdiction. If, by contrast, the defendant's site is passive, in that it merely makes information available, the site cannot render him subject to specific personal jurisdiction in a foreign court. Occupying a middle ground are semi-interactive websites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer. "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs."

*Carefirst*, 334 F.3d at 399 (internal citations omitted) (quoting *Zippo*, 952 F. Supp. at 1124).

available . . . cannot render [the website owner] subject to specific personal jurisdiction." *Carefirst*, 334 F.3d at 399 (citing *Zippo*, 952 F. Supp. at 1124).

A semi-interactive website—one between a passive and interactive website—permits some exchange of communication between the website and forum and may subject its owner to specific personal jurisdiction depending on the level and quality of interactivity. *Id.*

### b.     Defendant's Website is Interactive

Here, Defendant's website is not merely passive, but constitutes an interactive e-commerce website that supports the Court's conclusion that Defendant has sufficient minimum contacts with Virginia for the Court to exercise specific personal jurisdiction over Defendant. An interactive website is one in which "a defendant clearly does business over the Internet. If the defendant enters into 'contracts' with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."[16] *ALS Scan*, 293 F.3d at 713 (quoting *Zippo*, 952 F. Supp. at 1124).

Plaintiff contends and Defendant does not dispute that Defendant's website "requires users to register and create an account in order to purchase the products advertised in Defendant's direct solicitations." (Compl. ¶ 8.) The Court has previously found that, at the motion to dismiss stage, a website which allows viewers to passively observe information about a company and which contained a fillable form that allowed a viewer to contact the company for more information constituted a "semi-interactive website." *Foster Made, LLC v. Foster*, No. 3:17cv775, 2018 WL 4693810, at *7 (E.D. Va. Sept. 28, 2018).

---

[16] At the other end of the *Zippo* sliding scale—and not at issue here—is a passive website, one in which "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *ALS Scan*, 293 F.3d at 713–14 (quoting *Zippo*, 952 F. Supp. at 1124). Such a website does not support a court's exercise of personal jurisdiction. *Id.* (stating that "[a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.").

22

But Defendant's website does more. Defendant's website allows viewers to make purchases through the website after creating an account. (*See* Compl. ¶ 8.) Plaintiff has also submitted information to show that Defendant refers viewers to its website when soliciting business to make sales. (*See* Lava Vape Email 4–5.) At least one of the Virginia vape shops from which Plaintiff submitted a declaration had employees who visited Defendant's website from the link included in Defendant's solicitation. (*See* Smith Decl. ¶ 3.) As a result, Defendant's website plainly allows more contact than the "semi-interactive website" in *Foster Made*. Defendant's website is an interactive e-commerce website. *See Thousand Oaks Barrel*, 241 F. Supp. 3d at 716 (finding a similar website from which consumers could make purchases to be "plainly interactive").

Defendant's interactive website supports the Court's conclusion that Defendant has sufficient minimum contacts. *ALS Scan*, 293 F.3d at 713 (stating that an interactive website supports personal jurisdiction (quoting *Zippo*, 952 F. Supp. at 1124)).

### iv. Defendant Has Sufficient Minimum Contacts With Virginia

Mindful that at this early stage Plaintiff must make only a prima facie showing of personal jurisdiction and that the Court must make all inferences in favor of jurisdiction, the Court concludes that Defendant has sufficient minimum contacts with Virginia for the Court to exercise specific personal jurisdiction over Defendant. Here, Defendant has repeatedly solicited business from at least four Virginia consumers who are Plaintiffs' customers. Defendant has also made at least one sale in Virginia. Further, Defendant operates an interactive website that it encourages Virginia consumers to visit when soliciting business from them. Considering the factors identified by the Fourth Circuit in *Consulting Engineers*, the Court concludes that balancing these solicitations, the sale, and the website with Defendant's lack of physical

23

presence in Virginia, shows that Plaintiff has satisfied the first prong of the specific personal jurisdiction test—"the extent to which the Defendant purposefully avial[ed] itself of the privilege of conducting activities in the State." *ALS Scan*, 293 F.3d at 712; *see Consulting Eng'rs*, 561 F.3d at 278.

The Court now turns to the second and third factors: "(2) whether the plaintiffs' claims arise out of th[e] activities directed at the State; and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Unspam Techs, Inc.*, 716 F.3d at 328 (quoting *ALS Scan*, 293 F.3d at 712). For the reasons articulated below, the Court concludes that both factors also favor exercising specific personal jurisdiction.

### b. Plaintiff's Causes of Action Arise from Defendant's Contacts With Virginia

Much of the Parties' briefing focuses on whether Defendant has sufficient minimum contacts with Virginia. Neither Plaintiff nor Defendant specifically address whether Plaintiff's causes of action arise from Defendant's contacts with Virginia. Nonetheless, based on the information at bar, because Plaintiff must establish only a prima facie case of personal jurisdiction, the Court concludes that Plaintiff satisfies that standard here.

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278–79 (citing *Burger King*, 471 U.S. at 472; *Helicopteros*, 466 U.S. at 414).

Here, Plaintiff claims that Defendant infringed on its Vape Guys Mark under both federal and state law. "The standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same." *Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n*, 2 F. Supp. 3d 758, 768 (D. Md. 2014). "Likewise, 'the test for trademark infringement and unfair competition

under state law is the same as the test under the Lanham Act.'" *Id.* (citations omitted). To establish these claims, a plaintiff must establish:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*Id.* (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)).

Plaintiff has established that Defendant solicited business in Virginia, made at least one sale in Virginia, and operates an interactive website that Virginia consumers may access. Plaintiff also claims that Defendant's use of a similar name infringed on the Vape Guy Mark and these contacts caused confusion among Plaintiff's customers. These allegations go to the heart of Plaintiff's federal and common law trademark infringement and unfair competition claims. Because the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," at this early stage, the Court infers that Plaintiff's claims arise from Defendant's contacts with Virginia. *Brooks*, 242 F. App'x at 890. Therefore, Plaintiff also satisfies the second prong of the specific personal jurisdiction test—"whether the plaintiffs' claims arise out of [Defendant's] activities directed at the State." *ALS Scan*, 239 F.3d at 712.

### c.    The Court's Exercise of Personal Jurisdiction Over Defendant Is Not Constitutionally Unreasonable

Because Plaintiff has established that Defendant has sufficient minimum contacts with Virginia and its causes of action arise from those contacts, the Court must determine whether it would be constitutionally unreasonable for the Court to exercise specific personal jurisdiction

over Defendant. Balancing the factors identified by the Fourth Circuit, the Court concludes that it would not be constitutionally unreasonable to do so.

The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs.*, 561 F.3d at 279. For this final prong, the court may consider:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477).

Considering these criteria, the Court's exercise of specific personal jurisdiction over Defendant would not be constitutionally unreasonable. The second and third constitutional reasonableness factors weigh in favor of exercising personal jurisdiction over Defendant.

As to the second factor of the constitutional reasonableness test—Virginia's interest in adjudicating the dispute—Defendant claims that Virginia "is neither the most motivated forum to litigate the propriety of [Defendant's] conduct, nor [Defendant's] rights to act in geographic territories outside of Virginia" because the allegedly infringing conduct emanated from New York and Plaintiff requests a nationwide injunction. (Mem. Supp. Mot. Dismiss 12.) Defendant fails to recognize, however, that most of the alleged customer confusion, which forms the basis of Plaintiff's claims, occurred in Virginia. And because Plaintiff is a Virginia corporation, Virginia plainly has a strong interest in adjudicating this dispute. Therefore, the second factor weighs in favor of exercising jurisdiction.

26

As to the third factor of the constitutional reasonableness test—Plaintiff's interest in obtaining convenient and effective relief—Plaintiff has a clear interest in seeking this relief in its home forum. Defendant does not contest that this factor weighs in favor of jurisdiction. Therefore, this factor also weighs in favor of jurisdiction. All other factors weigh neutrally.[17]

The Court must currently make all inferences in favor of jurisdiction. *Brooks*, 242 F. App'x at 890. Although three of the factors that the Court must consider when deciding the third prong of the specific personal jurisdiction test weigh neutrally, two factors weigh in favor of this Court exercising personal jurisdiction over Defendant. Therefore, the Court concludes that its exercise of specific personal jurisdiction over Defendant would not be constitutionally unreasonable. Plaintiff satisfies the third and final element of the specific personal jurisdiction test.

### d. Conclusion: Plaintiff Has Established a Prima Facie Case of Personal Jurisdiction

Because the Court did not hold an evidentiary hearing, when deciding the Motion to Dismiss, the Court must determine whether Plaintiff has established a prima facie case of personal jurisdiction. *Carefirst of Md., Inc.*, 334 F.3d at 396. Plaintiff has established that Defendant has sufficient minimum contacts with Virginia through its solicitations for business

---

[17] The first, fourth, and fifth factors of the constitutional reasonableness test are neutral. As to the first factor—the burden on the defendant of litigating in the forum—Defendant states that because it "is a small company and has no physical presence in Virginia," it would "sustain a heavy burden should it be forced to litigate" in the Eastern District of Virginia. (Mem. Supp. Mot. Dismiss 12.) Defendant asks that if the Court finds it has specific personal jurisdiction over Defendant, that the Court transfer the case to the Eastern District of New York, Defendant's home forum. (*See id.* 22.) But if the Court required *Plaintiff* to litigate in the Eastern District of New York, it would suffer these same burdens. Therefore, the first factor does not weigh in favor or against personal jurisdiction.

As to the fourth and fifth factors—the shared interest of the states in obtaining efficient resolution of disputes and in furthering substantive social policies—both Virginia and New York have an interest in obtaining efficient resolution of this dispute and in upholding federal and common law trademark protections. Therefore, these factors also weigh evenly.

sent directly to Virginia consumers, sale in Virginia, and operation of an interactive website. Plaintiff has also shown that its claims arise out of those contacts. Finally, Plaintiff has established that the Court's exercise of specific personal jurisdiction over Defendant would not be constitutionally unreasonable. Because Plaintiff has established a prima facie case meeting each of the three elements of the specific personal jurisdiction test, the Court will deny the Motion to Dismiss for lack of personal jurisdiction and the Motion for Jurisdictional Discovery. The Court now turns to Defendant's Motion to Dismiss for improper venue and for failure to state a claim.

### III. Motion to Dismiss for Improper Venue

In addition to asking the Court to dismiss the Complaint for lack of personal jurisdiction, Defendant asks the Court to dismiss it for improper venue.

### A.    Standard of Review: Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). The "plaintiff bears the burden of establishing that venue is proper." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 925 (4th Cir. 2017) (citations omitted). Similar to a motion to dismiss for lack of personal jurisdiction, because the Court did not hold an evidentiary hearing, Plaintiff need "make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao*, 675 F.3d at 366 (citing *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir. 2004)). In determining whether a plaintiff has met this standard, "the court is permitted to consider evidence outside the pleadings." *Aggarao*, 675 F.3d at 365–66 (4th Cir. 2012) (citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). The Court should "view the facts in

the light most favorable to the plaintiff." *Id.* at 366 (citing *Glob. Seafood Inc. v. Bantry Bay Mussels, Ltd.*, 659 F.3d 221, 224 (4th Cir. 2011)).

### B. Legal Standard: Venue

Courts have found that the "Lanham Act has no special venue provision and thus the general venue statute is applicable." *Savvy Rest, Inc. v. Sleeping Organic, LLC*, No. 3:18cv30, 2019 WL 1435838, at *7 (W.D. Va. Mar. 29, 2019) (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). The general venue statute, 28 U.S.C. § 1391, provides:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

### C. The Eastern District of Virginia is a Proper Venue

Because Defendant does not reside in Virginia, the Court must determine whether a substantial part of the events or omissions giving rise to the claim occurred in Virginia. *See* 28 U.S.C. § 1391(b). The Court readily concludes that a substantial part of the events giving rise to Plaintiff's claims arose within the Eastern District of Virginia, therefore, rendering this Court a proper venue for this matter.

"In trademark infringement actions under the Lanham Act, appellate courts have held that a 'substantial part' of the events giving rise to such claims occur in any district where consumers are likely to be confused by the accused infringement, 'whether that occurs in one district or in many.'" *Savvy Rest*, 2019 WL 1435838, at *8 (citing *Cottman Transmission Sys.*

*v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994); *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)). "In cases involving websites, courts have held that venue was proper in a district where the defendant, whose business was located outside the district, operated a website advertising its products that was accessible in the district and made 'relatively modest sales' to customers there." *Id.* (quoting *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014)).

Because the Court has not held an evidentiary hearing, Plaintiff must make only a prima facie showing that venue is proper in this Court. Here, as discussed above, Plaintiff has asserted, and provided evidence to show, that customer confusion took place within the Eastern District of Virginia. Plaintiff has also demonstrated that Defendant operates an interactive website that Virginia consumers can access and that Defendant has encouraged Virginia consumers to access that website when soliciting their business. Finally, Plaintiff has established that Defendant has made at least one sale in Virginia. For these reasons, the Court concludes that a "substantial part of the events . . . giving rise to the claim occurred" in the Eastern District of Virginia, meaning venue properly lies in this Court. *See* 28 U.S.C. § 1391(b)(2). The Court will deny the Motion to Dismiss for improper venue. The Court now turns to Defendant's Motion to Dismiss for failure to state a claim.

## IV. Motion to Dismiss for Failure to State a Claim

In addition to asking the Court to dismiss this matter for lack of personal jurisdiction and for improper venue, Defendant contends that the Court must dismiss the case for failure to state a claim. At this early stage, the Court will also deny this request.

## A.    Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193.  The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of

the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**B.    Analysis**

Defendant argues that the Court must dismiss Plaintiff's trademark claims for two reasons:  (1) because before Plaintiff filed for federal trademark protection of the Vape Guys Mark Defendant used the term "Vape Guys" at the same time as Plaintiff;[18] and, (2) Plaintiff

---

[18] In support of this argument, Defendant requests that the Court look beyond the allegations contained in the Complaint and the documents attached by looking to the Khodos Declaration. Defendant asserts that the statements contained in this declaration show that Defendant used the term Vape Guys in New York before Plaintiff acquired federal trademark protection for the Vape Guys Mark.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

Although the Court can consider the Khodos Declaration when deciding the Motion to Dismiss on the lack of personal jurisdiction and improper venue grounds, the standard of review is different when the Court considers the Motion to Dismiss on the ground that Plaintiff has failed to state a claim. As to the failure to state a claim ground, because the Khodos Declaration is not an "official public record[], document[] central to [P]laintiff's claim, and" the Complaint does not refer to the Khodos Declaration, the Court cannot consider the allegations contained in the Khodos Declaration when deciding the Motion to Dismiss for failure to state a claim without converting the Motion to Dismiss into a motion for summary judgment. *Id.* Because Defendant's argument turns on the allegations contained in the Khodos Declaration and, as explained below, Plaintiff sufficiently pleads all elements of its claims, the Court will deny the Motion to Dismiss for failure to state a claim.

holds no protectable rights in the term "Vape Guys" because the term is neither "inherently

distinctive" nor has it "acquired a secondary meaning."[19] (*See* Mem. Supp. Mot. Dismiss 17.)

Because Plaintiff has pleaded all required elements to state its claims, the Court will deny

the Motion to Dismiss for failure to state a claim.

### 1. Legal Standard: Trademark Infringement and Unfair Competition Under the Lanham Act and Common Law Unfair Competition

As the Court has previously recognized, to establish its trademark infringement and

unfair competition claims, a plaintiff must establish:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*Potomac Conference Corp. of Seventh-day Adventists*, 2 F. Supp. 3d at 768 (quoting *People for*

*the Ethical Treatment of Animals*, 263 F.3d at 364; *Lamparello*, 420 F.3d at 313). "The test for

trademark infringement and unfair competition under the Lanham Act is essentially the same as

that for common law unfair competition under Virginia law because both address the likelihood

---

[19] Defendant asserts that the Court must dismiss Plaintiff's claims because it has not shown that the Vape Guys Mark is either "inherently distinctive" nor has it "acquired a secondary meaning." (*See* Mem. Supp. Mot. Dismiss 17.) "Secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Prot., LLC*, 419 F. Supp. 2d 861, 869 (E.D. Va. 2006) (considering whether a plaintiff had proven that a trade name had acquired a secondary meaning after a bench trial) (citation omitted). "Proof of secondary meaning entails vigorous evidentiary requirements." *Id.* (citation omitted). At this procedural stage, Plaintiff must only state sufficient facts to state a plausible claim that the Vape Guys Mark is inherently distinctive or has acquired a secondary meaning. *See Twombly*, 550 U.S. at 570 (stating that to survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face.")

Plaintiff has provided several examples—in the form of emails and text messages—of customers who associate the term Vape Guys with Plaintiff. (*See, e.g.*, Arc Email 1, Troposhere Text Message 1.) At this early stage, these allegations plausibly state a claim that the Vape Guys Mark has acquired a secondary meaning.

of confusion as to the source of the goods or services involved." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) (citations omitted).

### 2. Plaintiff Makes Sufficient Factual Allegations to State All Elements of Its Federal and Common Law Claims

When deciding the Motion to Dismiss for failure to state a claim, the Court must construe all well-pleaded factual allegations as true and make all reasonable "inferences in favor of the [P]laintiff." *Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 467. Looking to the allegations contained in the Complaint, the Court concludes that Plaintiff has sufficiently stated a claim for trademark infringement and unfair competition under both the Lanham Act and common law.

First, no dispute exists that Plaintiff holds a federal trademark for the Vape Guys Mark. Plaintiff attached its Trademark Registration Certificate to the Complaint showing that the USPTO awarded Plaintiff the Vape Guys Mark. (Trademark Registration Certificate 1.) "Existence of a registered mark constitutes prima facie evidence of the validity of the registered mark . . . , of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." *NSCO v. Colby_Exon, LLC*, No. 3:16cv848, 2018 WL 1568684, at *7 (E.D. Va. Mar. 30, 2018) (quoting *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir. 2003)) (internal quotation marks omitted). The "presumption of priority enjoyed by the registrant of a mark is 'nationwide in effect.'" *Emergency One, Inc.*, 332 F.3d at 268 (quoting 15 U.S.C. § 1057(c)). "Thus, registration of a trademark under the Lanham Act 'creates a presumption that the registrant is entitled to use the registered mark throughout the nation.'" *Id.* at 268–69 (quoting *Draeger Oil Co. v. Uno-Ven Co.*, 314 F.3d 299, 302 (7th Cir. 2002)). Because the USPTO has issued Plaintiff federal protection for the Vape Guys Mark, Plaintiff has sufficiently stated that it possesses a mark.

Second, Plaintiff has stated that Defendant used a similar name in an effort to solicit business from Plaintiff's customers. Plaintiff has shown that Defendant used the name "Vape Guys Distro.," which incorporates Plaintiff's Vape Guys Mark. Plaintiff attaches to its Complaint emails and a text message from various vape shops that show that Defendant contacted them in an effort to sell products similar to those offered for sale by Plaintiff.[20] (*See* Lava Vape Email 4–5 (showing that Defendant sent Lava Vape a catalog of products).) Defendant does not contest that it sent these solicitations or that its name incorporates the Vape Guys Mark. Based on these allegations, Plaintiff has met the second, third, and fourth elements of its trademark and unfair competition claims—that Defendant used the mark, "in commerce," and "in connection with the sale, offering for sale, distribution, or advertising" of goods. *Potomac Conference Corp. of Seventh-day Adventists*, 2 F. Supp. 3d at 768.

Finally, the Court must determine whether Plaintiff has sufficiently stated that Defendant "used the mark in a manner likely to confuse consumers." *Id.* The Fourth Circuit has identified seven factors[21] to assist the Court in determining whether a likelihood of confusion exists, but "[t]he likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited on a motion to dismiss." *Id.* (citing *Petro Stopping*

---

[20] Because Plaintiff attached these emails and text messages to its Complaint, the Court may consider them when deciding the Motion to Dismiss on the failure to state a claim ground without converting the Motion to Dismiss into a motion for summary judgment. *See Witthohn*, 164 F. App'x at 396–97.

[21] The seven factors are:

(a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods/services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; [and,] (g) actual confusion.

*NSCO*, 2018 WL 1568684, at * 8 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)).

*Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997)). Here, Plaintiff

states that Defendant's use of a name that contains the Vape Guys Mark has caused confusion

among Plaintiff's customers. Plaintiff attaches to its Complaint emails showing that at least one

of its customers thought Plaintiff offered a lower price for an item, when Defendant had actually

offered the lower price. (*See* Rolling Rock Vapor Email 2.) Plaintiff also attaches an email

from one of its suppliers in which the supplier thought Plaintiff had sold a product for less than

an agreed upon price when Defendant had made that sale. (*See* Arc Email 1.) Mindful of the

fact that the fifth factor of Plaintiff's federal trademark infringement claims—likelihood of

confusion—"is ill-suited [to a decision] on a motion to dismiss," Plaintiff has sufficiently stated

that Defendant has used the mark in a manner likely to confuse consumers. *Potomac*

*Conference Corp. of Seventh-day Adventists*, 2 F. Supp. 3d at 768.

Because Plaintiff has plausibly stated all five elements of its trademark infringement and

unfair competition claims, the Court will deny the Motion to Dismiss for failure to state a claim.

The Court now turns to Defendant's final ground for relief in the Motion to Dismiss, its request

to transfer this case under 28 U.S.C. § 1404(a).

### V. Transfer Pursuant to 28 U.S.C. § 1404(a)

In the Motion to Dismiss, Defendant states that if the Court finds that it can exercise

personal jurisdiction over the Defendant, venue is proper in the Eastern District of Virginia, and

Plaintiff plausibly states its claims, the Court should transfer this matter to the Eastern District

of New York pursuant to 28 U.S.C. § 1404(a). Because the § 1404(a) factors weigh against

transfer, the Court will deny the Motion to Dismiss on this ground as well.

### A.    Legal Standard: 28 U.S.C. § 1404(a)

Title 28, § 1404(a) governs transfer of venue, stating: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Bascom Research, LLC v. Facebook, Inc.*, No. 1:12cv1111, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012).

First, the court determines whether the claims could have been brought in the transferee forum. *Id.*

Second, the court considers the following four factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* A court's decision to transfer depends on the particular facts of the case because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005).

### B.    The § 1404(a) Factors Weigh Against Transfer

Here, although Plaintiff likely could have brought this action in the Eastern District of New York, the § 1404(a) factors that the Court must consider at step two of the § 1404(a) analysis weigh against transfer. The Court will discuss each factor in turn.

As to the first factor—plaintiff's choice of forum—a plaintiff's choice of forum "is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citing *Koh*, 250 F. Supp. 2d at

633). Here, Plaintiff has chosen to file the case in its home forum. Therefore, this factor is entitled to "substantial weight." *Id.* The Court has also previously found that it may exercise specific personal jurisdiction over Defendant and that this Court is a proper venue. Therefore, the first § 1404(a) factor weighs against transfer.

As to the second factor—convenience of the parties—courts typically consider "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." *Id.* (quoting *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007)). "At least one court in [the Eastern District of Virginia] has noted that 'when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer.'" *Id.* (quoting *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007)). "Moreover, transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." *Id.* (citing *Prod. Group, Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004)).

Looking to the second factor, Defendants claim that "[a]s a small company, [Defendant] has limited resources and litigating in Virginia would be unduly expensive so as to cause a financial hardship." (Mem. Supp. Mot. Dismiss 22.) Defendant also states that it "is located in New York, as are all officers, employees, and business documents that might be relevant to this action." (*Id.*) Plaintiff, on the other hand, states that it "would be similarly inconvenient, and undoubtedly more expensive, for Plaintiff to travel to New York to have its claims adjudicated." (Resp. Mot. Dismiss 15.)

Here, Plaintiff chose to file its case in its home forum meaning that the second factor—the convenience of the parties—"rarely, if ever, operates to justify transfer." *Heinz Kettler*, 750 F. Supp. 2d at 668 (citation omitted). Also, because Plaintiff is a Virginia corporation, transfer

of this matter would simply "serve to shift the balance of inconvenience from" Defendant to Plaintiff. *Id.* (citation omitted). Therefore, the second § 1404(a) factor also weighs against transfer to the Eastern District of New York.

As to the third factor—witness convenience and access—"[t]he party asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.'" *Id.* (citation omitted). Here, Defendant states that it "may . . . require testimony from third-party witnesses, such as the stores that sell its products." (Mem. Supp. Mot. Dismiss 22.) Defendant avers that "[m]any of these stores are located in New York. . . . None are located in Virginia." (*Id.*) Defendant maintains that "[w]hile Defendant would be able to compel attendance of the relevant witnesses in New York, they would not be able to compel their attendance in Virginia, including the former employee identified in Plaintiff's complaint." (*Id.*) Plaintiff responds that it "would face the same challenges compelling witnesses in Virginia . . . to provide testimony in New York." (Resp. Mot. Dismiss 15.) Similar to the second factor, the Court will not transfer the balance of inconvenience from Defendant to Plaintiff. Therefore, the third § 1404(a) factor also weighs against transfer.

Finally, as to the fourth factor—the interests of justice—"[t]his factor 'encompasses public interest factors aimed at systemic integrity and fairness.'" *Heinz Kettler*, 750 F. Supp. 2d at 669 (citation omitted). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* "Fairness is assessed by considering factors such as docket congestion, interest in having local controversies decided at

home, knowledge of the applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* at 670 (citation omitted).

As to this factor, Defendant posits that "Plaintiff's main claims are based on federal law, and thus the Eastern District of New York would be equally capable at applying the applicable law." (Mem. Supp. Mot. Dismiss 22.) Plaintiff maintains that "Virginia has an interest in providing a forum for its residents to litigate their disputes." (Resp. Mot. Dismiss 15 (quoting *Heinz Kettler*, 750 F. Supp. 2d at 670).)

Although the Court agrees that the Eastern District of New York could aptly apply the correct law to Plaintiff's claims, the other elements that the Court may consider when deciding the fourth § 1404(a) factor weigh against transfer. For instance, Plaintiff has filed this case in its home forum meaning that the "interest in having local controversies decided at home," weighs against transfer. *Heinz Kettler*, 750 F. Supp. 2d at 670. Similarly, this Court is well-versed in both the applicable federal and Virginia law, therefore, the "knowledge of applicable law" weighs against transfer. *Id.* Indeed, this Court likely has more experience applying Virginia law than does the New York court.

Although Plaintiff likely could have brought this action in the Eastern District of New York, because the § 1404(a) factors weigh against transferring this matter, the Court will deny the Motion to Dismiss on this ground as well.

## VI. Conclusion

For the foregoing reasons, the Court will deny the Motion to Dismiss on all asserted grounds: (1) lack of personal jurisdiction; (2) improper venue; (3) failure to state a claim; and, (4) to transfer under § 1404(a). Because the Court has found that it may exercise personal

jurisdiction over this matter, the Court will deny as moot the Motion for Jurisdictional Discovery. Finally, the Court will deny the Motion for Settlement.

An appropriate Order shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 3/2/2020
Richmond, Virginia